**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

KOI DESIGN LLC,

        *Plaintiff-Appellant*,

  v.

MARRON LAWYERS, APC,

        *Defendant-Appellee*,

 and

A. DOUGLAS MASTROIANNI,
DBA Mastroianni Law Firm; BLOOM
FIRM, APC; DOES, 1 through 25,

        *Defendants*.

No. 23-55704

D.C. No.:
2:19-cv-07154-
TJH

OPINION

Appeal from the United States District Court
for the Central District of California
Terry J. Hatter, Jr., District Judge, Presiding

Argued and Submitted October 7, 2025
Pasadena, California

Filed August 6, 2026

Before: Ronald Lee Gilman,[*] Kim McLane Wardlaw, and Lucy H. Koh, Circuit Judges.

Opinion by Judge Koh;
Partial Concurrence and Partial Dissent by Judge Gilman

## SUMMARY[**]

### Professional Liability

The panel reversed the district court's grant of summary judgment in favor of Marron Lawyers, APC, in a legal malpractice action brought by Koi Design, LLC, and remanded for further proceedings.

Koi sued Marron for breach of fiduciary duty, legal malpractice, and negligent supervision under California law, alleging that an associate previously employed by Marron, A. Douglas Mastroianni, grossly mishandled a trademark infringement litigation matter between Koi and Strategic Partners, Inc. ("SPI"), which ended with the district court granting SPI default judgment and treble damages, eventually leading to Koi's bankruptcy.

---

[*] The Honorable Ronald Lee Gilman, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

First, the panel held that the district court did not violate Fed. R. Civ. P. 56(f)(2) because the district court did not grant summary judgment in favor of Marron on a ground not raised by the parties without giving Koi adequate notice.

Second, the panel held that the district court erred in granting Marron summary judgment. The panel held that there were genuine disputes of material fact as to whether Marron breached its duties to Koi, an essential element of Koi's legal malpractice and breach of fiduciary duty claims. Breaches of the California Rules of Professional Conduct may be used to prove that a lawyer has breached his fiduciary duties or has breached the standard of care for a legal malpractice claim. Marron owed two duties to Koi: first, a duty to disclose to Koi material facts and significant developments in the SPI litigation; and second, an obligation to adequately supervise its employees. The panel concluded that, construing the facts in the light most favorable to Koi and drawing all reasonable inferences in Koi's favor, a reasonable jury could find that Marron breached its duty to disclose and its duty to supervise.

The panel also held that there were genuine disputes of material fact as to whether Marron's conduct caused Koi harm, a necessary element for all three of Koi's claims. The parties agreed that substantial factor causation applied to Koi's legal malpractice and negligent supervision claims but disagreed as to whether substantial factor or but for causation applied to the breach of fiduciary duty claim. The panel concluded that this dispute was immaterial because, on the facts of this case, substantial factor causation required the panel to apply the but for causation test to all of Koi's claims. Under the but for causation test, Koi was required to show that it would have obtained a more favorable judgment or settlement in the SPI litigation but for Marron's conduct.

A reasonable jury could find that it was more likely than not that Koi would have obtained a more favorable judgment in the SPI litigation with competent counsel because the district court in the SPI litigation granted SPI default judgment and treble damages in part because of Mastroianni's misconduct, including while Mastroianni was employed at Marron. A reasonable jury also could conclude that but for Marron's conduct, Koi would have replaced Mastroianni with competent counsel based on the fact that Koi immediately replaced Mastroianni in the SPI litigation when Koi discovered Mastroianni's gross mishandling of the litigation and based on the testimony of Koi's CEO.

Accordingly, the panel reversed the district court's grant of summary judgment and remanded for further proceedings.

Concurring in part and dissenting in part, Judge Gilman disagreed with the majority's analysis regarding the causation element of Koi's three claims. In Judge Gilman's view, under the first step of the substantial factor analysis, Koi failed to raise a genuine dispute of material fact as to but for causation for any of its claims. Under the second step of the substantial factor analysis, Koi failed to raise a genuine issue of material fact that Marron's actions were a concurrent independent cause of Koi's damages for its legal malpractice and negligent supervision claims, and so he would affirm the district court's grant of summary judgment on those claims.

Judge Gilman agreed, however, that Koi raised a genuine dispute of material fact on the causation element of Koi's breach of fiduciary duty claim, so he would reverse the district court's grant of summary judgment on that claim. In Judge Gilman's view, Marron's actions were a concurrent

independent cause of Koi's damages for Koi's breach of fiduciary duty claim.

## COUNSEL

Joshua I. Epstein (argued), Ronald W. Makarem, and Samuel D. Almon, Makarem & Associates APLC, Los Angeles, California, for Plaintiff-Appellant.

Randall A. Miller (argued) and Zachary Mayer, Miller Waxler, LLP, Los Angeles, California, for Defendant-Appellee.

## OPINION

KOH, Circuit Judge:

Koi Design LLC ("Koi") sued Marron Lawyers, APC ("Marron") for breach of fiduciary duty, legal malpractice, and negligent supervision under California law. Koi alleged that an associate previously employed by Marron, A. Douglas Mastroianni ("Mastroianni"), grossly mishandled a trademark infringement litigation matter between Koi and Strategic Partners, Inc. ("SPI"), eventually leading to Koi's bankruptcy. The district court granted summary judgment in favor of Marron on all claims. We reverse and remand for further proceedings consistent with this opinion.

## BACKGROUND

## I.   Factual Background

Marron is a small law firm with approximately eight to ten attorneys. Marron hired Mastroianni as an associate in April 2016. Also in April 2016, Koi retained Marron to represent it in a pre-litigation trademark dispute with SPI, one of Koi's competitors in the manufacture and sale of medical scrubs. On January 11, 2017, SPI sued Koi in the United States District Court for the Central District of California, alleging that Koi's medical scrubs had infringed a trademark owned by SPI ("SPI Litigation"). Marron was Koi's counsel of record in the SPI Litigation, and Mastroianni was the lead attorney.

While an associate at Marron, Mastroianni's representation of Koi in the SPI Litigation immediately ran into problems. Mastroianni failed to file a responsive pleading to SPI's complaint on Koi's behalf by the February 2, 2017 deadline. On February 3, 2017, the district court issued an order to show cause directing SPI to seek entry of default, dismiss the complaint, or file a declaration regarding the status of the case. In response to the order to show cause, counsel for both parties filed a joint stipulation extending Koi's time to answer SPI's complaint to March 2, 2017, which the court deemed "satisfactory." Mastroianni then filed an answer by the new deadline, but that answer did not comply with the Central District of California's Local Rule 7.1-1, requiring Koi to file a Notice of Interested Parties.

Significantly, Marron did not inform Koi of Mastroianni's failure to file a timely answer or the court's order to show cause.

Mastroianni's failure to comply with court deadlines persisted. The district court set an initial scheduling conference for May 15, 2017, and in a court order reminded the parties of their obligations under Federal Rule of Civil Procedure 26(f) ("Rule 26(f)") to "confer on a discovery plan not later than 21 days before the scheduling conference and to file a 'Joint Rule 26(f) Report' with the Court . . . not later than 7 days before the scheduling conference." The court warned that "[f]ailure to comply . . . or to cooperate in the preparation of the Joint Rule 26(f) Report may lead to the imposition of sanctions." Despite these warnings, Mastroianni failed to meet and confer with SPI's counsel and did not participate in preparing the Joint Rule 26(f) report. SPI's counsel reached out to Mastroianni four times to schedule the required meet and confer, but Mastroianni never responded. On May 8, 2017, SPI filed a Notice of Defendant's Refusal to Participate in a Rule 26(f) Conference, informing the court that Mastroianni "ignored all communications attempting to schedule a conference." SPI attached an exhibit showing that Mastroianni had failed to respond to four emails over ten days. SPI also unilaterally filed a Rule 26(f) report, in which SPI argued that entry of default and default judgment against Koi was appropriate under the circumstances.

No one at Marron informed Koi of Mastroianni's failure to participate in the Rule 26(f) process, or that SPI had filed a Notice informing the court of Mastroianni's noncompliance.

Then, just three days before the May 15, 2017 scheduling conference, Mastroianni filed an ex parte application to continue the conference. In the application, Mastroianni explained that his failure to cooperate with SPI's counsel was the result of a "series of errors." First, Mastroianni had

"frequent absences from the office due to treatment for an on-going medical condition." Second, Mastroianni "assigned the day-to-day handling of this matter to [an] associate" but when "that associate subsequently left [Marron,] the matter was not reassigned." Third, "events in this action ... were inadvertently not calendared by [Marron's] calendaring system." Finally, Mastroianni was not receiving ECF notifications for the matter, "compounding errors."

Again, no one at Marron informed Koi of Mastroianni's ex parte application or the concerning information contained in the application.

At the time of these developments in the SPI Litigation, Mastroianni failed to add any paralegal to his Case Management/Electronic Case Files ("CM/ECF") account.[1] This meant that no Marron paralegal received notifications for filings in the SPI Litigation, including the filing of the district court's order to show cause, SPI's Notice of Defendant's Refusal to Participate in a Rule 26(f) Conference, SPI's unilateral Rule 26(f) report, and Mastroianni's ex parte application. Mastroianni's failure to add a paralegal to his CM/ECF account was a violation of Marron's internal policies. Marron's sole and managing shareholder who had overall managerial authority over the firm, Paul Marron ("Paul"), testified that he did not learn of Mastroianni's policy violation until after Mastroianni was terminated. The record suggests, however, that at least one paralegal, Mini Leano ("Mini"), knew Mastroianni was not complying with Marron's policy and had sent Mastroianni

---

[1] CM/ECF is used by the federal judiciary to allow for electronic filing of documents in federal court cases and to notify parties of filings in their cases.

"emails following up on [Mastroianni's] CM-ECF logins." Paul stated in an email that, "[h]ad Mini brought this to our attention sooner, it would have led to termination and/or triggered investigation."

In addition to not notifying Koi of these developments in the SPI Litigation, Marron did not disclose to Koi that Marron had serious concerns regarding Mastroianni's performance. In the days leading up to Mastroianni's termination on May 31, 2017, Paul sent numerous internal emails detailing Mastroianni's incompetence and discussing the need to terminate Mastroianni.

For example, on May 23, 2017, Paul emailed Mastroianni (referred to as "Doug" in emails) regarding an ex parte application in a different matter. In the email, Paul instructed Mastroianni to work with Marron associate Bill Hendricks ("Bill") and paralegal Angie Urbina ("Angie") to prevent further "missed deadlines." Paul wrote:

> Doug – Re below, below is obviously a ball dropped that should not have happened, and I don't want to have to continue to get engaged in pressing so much for basics to get done/that they have been done. On this end, it is a management issue and the management of the cases has to improve. You are going to need to work more with Bill/Angie on these issues. Give Bill assignments where appropriate. You have a pattern of selflessly volunteering to get more done than might reasonably be expected. This then results in missed deadlines or lapsed priorities. Bill is a resource to prevent things like this. He also has a good eye for the calendar so I am asking

him to get more assertive and engaged on
these issues, but this is not a 'dig' at you. . . .
Work with Bill to get the ex parte done.

Even though Angie was a paralegal and Mastroianni was
an attorney, Paul, on May 24, appointed Angie to be
Mastroianni's "minder" to ensure that a deadline in an
unidentified matter was met:

Angie – You are appointed Doug's "minder"
on this so it gets done, a must for Th[ursday].

On the same day, Paul emailed the office administrator
stating that Mastroianni was creating a discouraging
situation for Bill and frustrating other Marron employees.
Paul discussed the need to terminate Mastroianni because
Mastroianni's conduct posed repeated malpractice and client
relation risks:

I would appreciate your insight into whether
we could . . . fire Doug. His stunt(s) re the
[REDACTED] ex parte and also creating a
very discouraging situation for Bill are
approaching the end of my patience. Apart
from patience, *he is pretty clearly doing
things repeatedly that are malpractice risks*
and/or although at a minor level so far, signs
of potential serious failure/omission.

I gave him some respite and patience either
yesterday or Monday – yet he went off
reckless again re his inability to personally
manage himself, yesterday or Tuesday giving
notice of the ex parte for tomorrow - - when
he flew to PHX Tuesday evening with the

papers incomplete. Said he would be back in the office this am and did not show up, or let me know (did he let you?). When Angie left today she reported the papers were not done. Perhaps he will be in the office 4 am Th[ursday] to get the papers done but even if that *the disorganization is too pervasive and malpractice and client relation risk* [sic]. Not to mention frustration of fellow employees and what is becoming an ever greater distraction for me when I should be prepping for [REDACTED] trial.

The next day, May 25, Paul told several Marron employees, including Bill, to stay subtle about Mastroianni's impending termination and noted that Bill would be taking over a matter from Mastroianni:

No term[ination] Friday . . . . Stay subtle re term[ination]. Announce to Doug, Fri, however that Bill is taking over and fully in charge on [REDACTED] and Doug is to give him info and cooperate and take assignments. . . . Basically we need to ease into the Term[ination] which will be Tu or Wed. I will offer Doug chance to defend next week Depos on short term [independent contract] but we also will want to stay focused on moving on."

On May 26, Paul again emailed the office administrator about the amount of time Paul had to spend supervising

Mastroianni and the repeated problems Mastroianni created on his cases:

> *Note [Mastroianni's] lapses have been chewing up as much as 2 to 3 hours in a day, routinely, and for approx. 6 weeks.* Yesterday it was the entire day (6 hours). He is a major drain on my time as I have to overly supervise him on cases where I am involved and repeated problems on cases he was responsible for.

Later that same day, Paul sent the office administrator another email, noting that Paul had to tell Mastroianni to get an assignment done four times in one week:

> D[oug]'s Personnel, point being that I had to tell him to do this on a Th[ursday], after having told him 3x orally over the prior week to do so.

Several days later, on May 30, Bill told Paul and the office administrator that Doug was wrong about a deadline, and that paralegal Angie was correct:

> Doug is still responding to some emails. I don't know what that means but just fyi. Also, Angie is correct – those are deadlines in [REDACTED], not [REDACTED.] PBA and

> I decided we are not filing anything tomorrow on that.

Finally, also on May 30, Paul emailed the office administrator about Mastroianni's formal termination:

> Note – Formal termination decision made Friday [May 26]. He has intentionally (he has to know he will be terminated given his behaviors) or with gross indifference not come in to work – thus avoiding presentation of term letter because he has not been in to work [sic.].

Marron terminated Mastroianni on May 31, 2017. In its termination letter, written by the office administrator, Marron again documented Mastroianni's incompetence, malpractice risks, and the negative effect that Mastroianni had on his colleagues. The termination letter noted the following failures, among others, in a bulleted list:

- "Failure to either timely respond, or respond at all, to e-mail communications, telephone calls, and written correspondence/documentation sent by clients, counsel and fellow Marron Lawyers' staff members";

- "Your consistent omission to plan ahead for filing and/or service of necessary documents, essentially waiting until the eleventh-hour, which in turn resulted in disruption, chaos for the paralegals and admin staff, harmed morale and overall

effectiveness and increased rush attorney service charges which then had to be passed on to the client";

- " . . . exposed the Firm to potential State Bar complaint; as well as malpractice action for failure to properly reject [a potential client]. Your omissions required my [the office administrator's] and Paul Marron's repeated interventions, yet you still failed to correct the matter. Even after a rejection, you claimed to have told [REDACTED] you would find her another attorney. You then reported to a number of us that you have referred her to another attorney. I then contacted [REDACTED], and she stated she had not heard from you regarding a referral. . . ";

- "You have placed yourself in a position where a number of your peers doubt your word on certain issues, feel you have to be verified or checked, etc. Combined with ignoring deadlines, not being prepared, not communicating, communicating in a way that may be deceptive or misleading, etc. your increasing impact on peers has ranged from undermining morale to distrust, to what could be called as major doubts. This in turn has resulted in an absolutely unacceptable situation where hours and hours of your peers' time had to address

both your shortcomings and lapses in work";

- "A final exceedingly important point is that on an increasing basis, your lapses resulted in situations where, if your peers and administration did not jump in and take action, you would have exposed the Firm to malpractice liability or other complaints, disservice/damage to clients/their cases and damage to the Firm's reputation (again despite strong efforts in some respects). By the end, there was a near certainty that unless you were let go, such would happen."

Despite these numerous documented issues with Mastroianni's performance, Marron never raised any concerns to Koi. During a June 16, 2017 phone call between Bill and Koi's CEO, Kathy Peterson ("Peterson"), Peterson "specifically asked whether [she] had any reason to be concerned" about Mastroianni's handling of the SPI Litigation. Peterson further "inquired about the cause of Mr. Mastroianni's sudden departure." Bill responded "that he was not in 'the meeting,' leading [Peterson] to believe that he did not know the reason for Mr. Mastroianni's departure." Bill then directed Peterson "to speak with Mr. Mastroianni," and "gave [Peterson] no indication that there was a reason to be concerned."

Following his termination from Marron, Mastroianni joined the Bloom Firm, APC ("Bloom") sometime in June 2017. Mastroianni continued to represent Koi in the SPI Litigation while at Bloom. The SPI Litigation ended with the district court imposing terminating sanctions on Koi and

granting default judgment to SPI because "Koi repeatedly, unjustifiedly [sic], and continuously failed to comply with Magistrate Judge Gail Standish's lawful orders." The district court awarded SPI $5,266,380.68 in damages, in part by trebling Koi's alleged profits from infringing SPI's trademark.

When Koi discovered the case terminating sanctions and default judgment, Koi promptly terminated Mastroianni, retained new counsel, and filed a motion to vacate the default judgment. The magistrate judge issued a report recommending that the district court deny Koi's motion ("Report and Recommendation"). The district court adopted the Report and Recommendation in full.

On January 25, 2019, Koi filed for bankruptcy protection because of the default judgment.

## II.  Procedural Background

On July 1, 2019, Koi sued Mastroianni, Marron, and Bloom for breach of fiduciary duty, legal malpractice, and negligent supervision for their conduct during the SPI Litigation.[2] Bloom settled with Koi for $1,109,999.84 in June 2021.

Relevant to this appeal, Marron filed a motion for summary judgment on all of Koi's claims against Marron on February 17, 2022. The district court granted summary judgment in favor of Marron only on Koi's legal malpractice claim. The court denied Marron's request for summary judgment on Koi's breach of fiduciary duty claim and did not address Koi's negligent supervision claim. Marron then filed a motion for "clarification and correction," arguing that

---

[2] Koi's complaint asserted other claims not relevant to this appeal.

the district court erred in denying summary judgment on the breach of fiduciary duty claim and pointing out that the district court had failed to address Koi's negligent supervision claim. Koi filed an opposition to the motion, in which Koi argued that the district court erred in granting summary judgment on a ground not raised by the parties without adequate notice, in violation of Federal Rule of Civil Procedure 56(f)(2) ("Rule 56(f)(2)").

The district court issued an amended summary judgment order on August 11, 2022. The amended order granted summary judgment in favor of Marron on the legal malpractice, breach of fiduciary duty, and negligent supervision claims solely on the grounds that Koi had not established that Marron's alleged conduct caused Koi's injuries. The amended order did not address Koi's inadequate notice argument. The amended summary judgment order was merged into the final judgment in the case on July 11, 2023, when the district court granted default judgment against Mastroianni for $6,529,950.86.[3] This timely appeal followed.

## STANDARD OF REVIEW

We review the district court's grant of summary judgment de novo. *Merrick v. Hilton Worldwide, Inc.*, 867 F.3d 1139, 1145 (9th Cir. 2017). "Summary judgment is appropriate if—construing the facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor—there is no genuine dispute of material fact, such that judgment is appropriate as a matter

---

[3] We resolve Mastroianni's appeal of this default judgment in a concurrently filed memorandum disposition, in which we affirm the district court's grant of default judgment. *See Koi Design LLC v. A. Mastroianni*, No. 23-55724.

of law." *Id*. A "dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where, as here, the nonmoving party bears the burden of proof at trial, the moving party may secure summary judgment by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). When the moving party satisfies its initial burden, "'the burden shifts to the non-moving party to set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial.'" *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927-28 (9th Cir. 2009) (quoting *Horphag Rsch. Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007)).

## LEGAL STANDARD

Koi appeals the district court's grant of summary judgment in favor of Marron on Koi's legal malpractice, breach of fiduciary duty, and negligent supervision claims. The elements of these claims are similar.

The elements of a "legal malpractice action arising from a civil proceeding" are "(1) the duty of the attorney to use such skill, prudence, and diligence as members of his or her profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the breach and the resulting injury; and (4) actual loss or damage resulting from the attorney's negligence." *Coscia v. McKenna & Cuneo*, 25 P.3d 670, 672 (Cal. 2001). "[A]n attorney's duties to his client are conclusively established by the rules of professional conduct . . . ." *Mirabito v. Liccardo*, 5 Cal. Rptr. 2d. 571, 573 (Cal. Ct. App. 1992); *see also David*

*Welch Co. v. Erskine & Tulley*, 250 Cal. Rptr. 339, 343 (Cal. Ct. App. 1988) ("Violations of professional standards" are breaches of "the standard of care" for purposes of a legal malpractice claim (citation modified)).

Likewise, "[t]he elements of a cause of action for breach of fiduciary duty are: (1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach." *Stanley v. Richmond*, 41 Cal. Rptr. 2d 768, 776 (Cal. Ct. App. 1995). Similar to the legal malpractice claim, "[t]he scope of an attorney's fiduciary duty may be determined as a matter of law based on the Rules of Professional Conduct [] together with statutes and general principles relating to other fiduciary relationships." *Id.* (internal quotation marks and citation omitted)

The elements of a negligent supervision claim are (1) the employer hired the employee, (2) the employee was or became unfit or incompetent to perform the work for which they were hired, (3) the employer knew or should have known that the employee's unfitness or incompetence posed a particular risk to others, (4) the employee's unfitness or incompetence harmed the plaintiff, and (5) the employer's negligent supervision was a substantial factor in causing the plaintiff's harm. Judicial Council of California Civil Jury Instructions (2026), No. 426 ("Negligent Hiring, Supervision, or Retention of Employee"); *see Lopez v. Watchtower Bible & Tract Soc'y of N.Y., Inc.*, 201 Cal. Rptr. 3d 156, 177 (Cal. Ct. App. 2016).

## ANALYSIS

Koi raises two principal issues on appeal. First, Koi argues that the district court violated Rule 56(f)(2) by granting summary judgment on a ground not raised by the parties, without adequate notice to Koi. Second, Koi argues

that the district court erred in determining that Koi failed to establish a genuine dispute of material fact as to Koi's legal malpractice, breach of fiduciary duty, and negligent supervision claims. We address each in turn.

## I.   The District Court Did Not Violate Rule 56(f)(2)

Koi first argues that the district court violated Rule 56(f)(2) by granting summary judgment in favor of Marron "on [a] ground[] not raised by a party" without giving Koi adequate notice. Fed. R. Civ. P. 56(f)(2) ("After giving notice and a reasonable time to respond, the court may . . . grant the motion on grounds not raised by a party . . . .").[4] Koi's primary contention is that the district court granted summary judgment in favor of Marron on the ground that Koi could not prove damages even though Marron only challenged the causation element of Koi's claims. This argument misreads the district court's amended summary judgment order. The district court's order explicitly stated that Marron was entitled to summary judgment because "Koi failed to present any evidence to establish the *causation* element" of its claims. Koi's argument that the district court granted

---

[4] Marron argues that Koi waived these arguments by failing to raise them before the district court. That is incorrect. Although there is "no 'bright line rule'" for when an argument is waived on appeal, generally an issue is not waived if it was "'raised sufficiently for the trial court to rule on it.'" *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 515 (9th Cir. 1992) (quoting *In re E.R. Fegert, Inc.*, 887 F.2d 955, 957 (9th Cir. 1989)). Here, in Koi's response to Marron's motion for clarification of the district court's first summary judgment order, Koi argued that the district court violated Rule 56(f)(2). The district court thus had an opportunity to rule on this issue in its amended summary judgment order. The fact that the district court did not do so is irrelevant. *See Consumer Fin. Prot. Bureau v. Gordon*, 819 F.3d 1179, 1191 n.5 (9th Cir. 2016) (holding that an argument properly raised before the district court, but which "the district court refused to resolve," was not waived).

summary judgment on a ground not raised by Marron is therefore without merit.[5]

Koi contends in the alternative that the district court violated Rule 56(f)(2) by relying "on a *theory*" regarding Koi's inability to establish causation that was not raised by Marron. In Koi's telling, Marron's summary judgment motion challenged causation solely on the theory that Koi could not show that Marron caused Koi's default in the SPI Litigation. Instead of relying on that theory, Koi contends, the district court found that Koi could not show that it would have ultimately prevailed on its trademark defenses in the SPI Litigation or obtained a better outcome than its settlement with SPI.

Koi's contention that it lacked notice of the "theory" relied upon by the district court is contradicted by the record. Koi's own opposition to Marron's motion for summary judgment repeatedly attempted to refute this theory by arguing that "whether Koi would have obtained a more favorable judgment or settlement but for conduct that occurred during Marron's representation is a factual issue for trial." The district court ultimately disagreed with Koi and concluded that Koi presented "no evidence" that it could have "achieved a better final outcome than its settlement with SPI." Koi may disagree with that conclusion, but it cannot dispute that it had adequate notice that this was one theory on which summary judgment may be granted.[6]

---

[5] Because the district court granted summary judgment on causation, not damages, we need not address Koi's argument that the district court improperly shifted the burden to Koi to establish damages.

[6] Koi's reliance on the Tenth Circuit's decision in *Oldham v. O.K. Farms, Inc.* is thus misplaced. 871 F.3d 1147, 1148 (10th Cir. 2017). In *Oldham* the Tenth Circuit held that the district court violated Rule 56(f)(2) where

Accordingly, the district court's order did not violate Rule 56(f)(2).

## II. The District Court Erred In Granting Marron Summary Judgment On Koi's Three Claims

We now turn to Koi's contention that the district court erred in finding that there was no genuine dispute of material fact as to Koi's claims for legal malpractice, breach of fiduciary duty, and negligent supervision. On appeal, the parties have two major disputes. First, the parties dispute whether there was a triable issue of fact as to the breach of duty element of Koi's legal malpractice and breach of fiduciary duty claims. Second, the parties dispute whether there was a triable issue of fact as to whether Marron's conduct caused Koi any harm, a necessary element for all three of Koi's claims.

For the reasons stated below, we agree with Koi that there is a triable issue of fact as to both breach and causation. We therefore reverse the district court's award of summary judgment in favor of Marron.

### A.     There is a genuine dispute as to whether Marron breached its duties, an essential element of Koi's legal malpractice and breach of fiduciary duty claims

The parties first dispute whether Koi established a genuine issue of material fact as to the breach element of Koi's legal malpractice and breach of fiduciary duty claims. The first two elements of these two claims are essentially the

---

"the district court's ruling was based on a theory that was not raised by Defendant *or briefed by either party*." *Id.* (emphasis added). Unlike in *Oldham*, here Koi itself briefed the theory on which the district court decided Marron's summary judgment motion.

same: (1) duty and (2) breach. *See Coscia*, 25 P.3d at 672 (legal malpractice); *Stanley*, 41 Cal. Rptr. 2d at 776 (breach of fiduciary duty). Moreover, for purposes of both claims, the scope of the duty may be determined with reference to the California Rules of Professional Conduct. *See Stanley*, 41 Cal. Rptr. 2d at 776 ("The scope of an attorney's fiduciary duty may be determined as a matter of law based on the Rules of Professional Conduct [] together with statutes and general principles relating to other fiduciary relationships . . . ." (internal quotation marks and citation omitted)); *Mirabito*, 5 Cal. Rptr. 2d. at 573 ("[A]n attorney's duties to his client are conclusively established by the rules of professional conduct" for legal malpractice claims.).

Breaches of the Rules of Professional Conduct may be used to prove that a lawyer "ha[s] breached his fiduciary duties." *Mirabito*, 5 Cal. Rptr. 2d at 573. Likewise, "violations of professional standards" are breaches of "the standard of care" satisfying the breach of duty element of a legal malpractice claim. *David Welch Co.*, 250 Cal. Rptr. at 343 (citation modified).

In this case, the parties agree that Marron owed two duties to Koi. First, the parties agree that Marron had a duty to disclose to Koi material facts and significant developments in the SPI Litigation. *See Beal Bank, SSB v. Hadden, LLP*, 167 P.3d 666, 673 (Cal. 2007) (fiduciary duty to disclose material facts); Cal. R. Pro. Conduct (1992) 3-500 (California Rule of Professional Conduct requiring that attorneys "keep [] client[s] reasonably informed about significant developments relating to the employment or representation").

Second, the parties agree that Marron had "an obligation to adequately supervise [its] employees." *Layton v. State*

*Bar*, 789 P.2d 1026, 1032 (Cal. 1990); *see also* Cal. R. Pro. Conduct (1992) 3-110, Discussion (describing "the duty to supervise the work of subordinate attorney" and collecting California Supreme Court citations).

"Breach of duty is usually a fact issue for the jury," and such is the case here. *Lysick v. Walcom*, 65 Cal. Rptr. 406, 416 (Cal. Ct. App. 1968) (legal malpractice case); *see also Stanley*, 41 Cal. Rptr. 2d at 776 ("Whether an attorney has breached a fiduciary duty to his or her client is generally a question of fact."). As discussed below, construing the facts in the light most favorable to Koi and drawing all reasonable inferences in Koi's favor, we conclude that a reasonable jury could find that Marron breached its duty to disclose and its duty to supervise. *See Merrick*, 867 F.3d at 1145. Thus, a triable issue of fact exists as to the breach element of both Koi's legal malpractice claim and breach of fiduciary duty claim.

### 1. Duty to disclose

A reasonable jury could conclude that Marron breached its duty to disclose in at least two ways: (1) by failing to disclose that Mastroianni posed malpractice risks and (2) by failing to disclose several significant developments in the SPI Litigation. We discuss each in turn.

First, based on the evidence in the record, a reasonable jury could find that Marron knew that Mastroianni, Koi's lead counsel in the SPI Litigation, posed malpractice risks and yet did not disclose this information to Koi. Paul's numerous emails to Mastroianni, Bill, and other Marron employees, along with Mastroianni's termination letter discuss at length Mastroianni's inability to meet deadlines or adequately manage his cases. For example:

- On May 23, 2017, Paul emailed Mastroianni and reprimanded him for "a ball dropped" in another matter "that should not have happened." Paul discussed Mastroianni's tendency to "miss[] deadlines" and told Mastroianni that his "management of the cases has to improve."

- On May 24, Paul told the office administrator that Mastroianni "is pretty clearly doing things repeatedly that are malpractice risks" and that Mastroianni's "disorganization is too pervasive and [a] malpractice and client relation risk."

- On May 26, Paul emailed the office administrator complaining about the "repeated problems on cases [Mastroianni] was responsible for."

- In Mastroianni's termination letter, Marron described Mastroianni's "[f]ailure to either timely respond, or respond at all, to e-mail communications, telephone calls, and written correspondence/documentation sent by clients, counsel and fellow Marron Lawyers' staff members."

- Mastroianni's termination letter further noted Mastroianni's "consistent omission to plan ahead for filing and/or service of necessary documents, essentially waiting until the eleventh-hour, which in turn

resulted in disruption, chaos for the paralegals and admin staff, harmed morale and overall effectiveness and increased rush attorney service charges which then had to be passed on to the client."

• Mastroianni's termination letter thus concluded as an "exceedingly important point" that it "was a near certainty that unless [Mastroianni was] let go," Mastroianni would "expose[] [Marron] to malpractice liability."

A reasonable jury could conclude that Mastroianni's incompetence and malpractice risks were material information that Marron needed to disclose to Koi for Koi to "make an informed decision" about whether to continue retaining Mastroianni as lead counsel in the SPI Litigation. *Knutson v. Foster*, 236 Cal. Rptr. 3d 473, 487 (Cal. Ct. App. 2018) (describing attorney's failure to disclose all "information [the client] needed to make an informed decision about" a settlement agreement as a breach of the duty to disclose material facts). Yet Marron never disclosed this information to Koi, and Paul even admitted that no one at Marron "inform[ed] anyone at Koi that Mastroianni had been terminated because he was a malpractice liability."

A reasonable jury could also find that Bill concealed Mastroianni's numerous documented performance issues and malpractice risks from Koi. When Koi's CEO Peterson asked Bill why Mastroianni was terminated and whether Koi had any reason to be concerned about Mastroianni, Bill stated "that he was not in 'the meeting'" and directed Peterson "to speak with Mr. Mastroianni." A reasonable jury

may well infer that Bill—one of only eight to ten attorneys at Marron and the attorney tasked with working with Mastroianni on his performance issues and taking over some of Mastroianni's cases—knew that Mastroianni was terminated because he was incompetent and posed malpractice risks. For example, in one email, Bill told Paul that Mastroianni was wrong about a deadline and that paralegal "Angie [wa]s correct." In another email, Paul noted that he had asked Bill to "get more assertive and engaged on [Mastroianni's case management] issues." And in an email discussing details of Mastroianni's upcoming termination, Paul told Bill that Bill would be "taking over and fully in charge" of one of Mastroianni's matters. Finally, Paul told the office administrator that Mastroianni's "stunts" were "creating a very discouraging situation for Bill." A reasonable jury could thus conclude that Bill concealed Mastroianni's malpractice risks when, in response to Peterson's questions about Mastroianni, Bill told Peterson that he "wasn't in the meeting" and gave "no indication that there was a reason to be concerned."

Second, a reasonable jury could conclude that Marron's failure to inform Koi of developments in the SPI Litigation, including that Mastroianni missed multiple court deadlines and exposed Koi to a potential case terminating default judgment, constituted a breach of Marron's duty to disclose. Mastroianni initially failed to file a timely answer on Koi's behalf, leading the district court to issue an order to show cause that invited SPI to move for default judgment. Mastroianni then failed to participate at all in the joint Rule 26(f) process, prompting SPI to file a Notice informing the court that Mastroianni had "ignored all communications" and a unilateral Rule 26(f) report arguing that default judgment was appropriate. Then, just days before the May

15, 2017 scheduling conference, Mastroianni filed an ex parte application to continue the conference in which Mastroianni described several concerning facts with respect to his handling of the SPI Litigation. Again, no one at Marron ever disclosed any of this information to Koi. In fact, at his deposition, Paul admitted that no one at Marron "inform[ed] anyone at Koi that Mastroianni had made mistakes in the handling of the SPI Litigation."

A reasonable jury could find that Marron, Koi's counsel of record, breached its duty to disclose by failing to inform Koi of these facts. Although a lawyer is not obligated to communicate "insignificant or irrelevant information" to their client, Mastroianni's mistakes concerned the very subject of Marron's representation of Koi: Koi's defense in the SPI Litigation. Cal. R. Pro. Conduct (1992) 3-500, Discussion. Thus, drawing all inferences in Koi's favor, a reasonable jury could conclude that Marron should have informed Koi of Mastroianni's failure to comply with multiple court deadlines, as those failures called into doubt the effectiveness of Mastroianni's continued representation of Koi and exposed Koi to a potential case-dispositive motion for default and default judgment in the SPI Litigation.

In addition to the factual record, Koi submitted the opinion of a legal malpractice expert that: (1) failure to inform a client that its lead counsel "was generally mishandling other client matters and was considered to be a malpractice liability" is a breach of the duty to disclose; and (2) failure to disclose "conduct that violates court orders and rules and that could subject the client to sanctions or have other adverse consequences, such as a default judgment" is a breach of the duty to disclose. Although Marron's expert disputed these conclusions, the district court never excluded

them, and a reasonable jury could agree with them. This alone precludes summary judgment in Marron's favor on the breach element of Koi's legal malpractice and breach of fiduciary duty claims. *See Primiano v. Cook*, 598 F.3d 558, 567 (9th Cir. 2010) (finding admission of an expert's "opinion precluded summary judgment, because if the jury accepted it," the jury could return a verdict for the nonmoving party).

Because a reasonable jury could conclude that Marron breached its duty to disclose, a genuine dispute of material fact exists as to the breach element of Koi's legal malpractice and breach of fiduciary duty claims.

### 2. Duty to supervise

A reasonable jury could also find that Marron breached its duty to supervise for two reasons. First, despite recognizing the need to supervise Mastroianni in other cases, there is no evidence in the record that Marron ever supervised Mastroianni's handling of the SPI Litigation. A reasonable jury could infer that Marron knew as early as April 2017—while the SPI Litigation was in its early stages—that Mastroianni required supervision. For example, in an email dated May 26, 2017, Paul told the office administrator that Mastroianni's "lapses have been chewing up as much as 2 to 3 hours in a day, routinely, and for approx. 6 weeks. . . . He is a major drain on my time as I have to overly supervise him on cases where I am involved and repeated problems on cases he was responsible for." Paul also testified at his deposition that Mastroianni was fired because "over the last few weeks [Mastroianni] was employed at the firm [before Mastroianni's termination on May 31], it became increasingly necessary to monitor his

work, and he was not performing according to our standards."

During this same time period, on May 8, 2017, SPI filed a Notice of Defendant's Refusal to Participate in a Rule 26(f) Conference, which showed that Mastroianni had "ignored all communications attempting to schedule a conference" by ignoring four emails over ten days from SPI's counsel. Also on May 8, SPI filed a unilateral Rule 26(f) report, which argued that entry of default and default judgment against Koi was appropriate. Then, on May 12, 2017, Mastroianni filed an ex parte application to continue the May 15 scheduling conference. In the application, Mastroianni explained that he had failed to cooperate with SPI's counsel due to "frequent absences from the office due to treatment for an on-going medical condition." The application also stated that Mastroianni had "assigned the day-to-day handling of this matter to [an] associate" but when "that associate subsequently left [Marron,] the matter was not reassigned." Finally, Mastroianni's application asserted that "events in this action . . . were inadvertently not calendared by [Marron's] calendaring system" and that Mastroianni was not receiving ECF notifications.

Mastroianni's lapses were consistent enough that on May 24, 2017, Paul appointed a paralegal "minder" for Mastroianni, an attorney, in at least one case to ensure Mastroianni did the required work and met deadlines. However, even these efforts to supervise Mastroianni sometimes proved insufficient, as in one case, Mastroianni "failed to correct" a mistake despite "Paul Marron's repeated interventions."

Mastroianni's repeated absences and failure to meet deadlines in April and May 2017 were, according to Paul,

causing "frustration [among] fellow employees." As detailed in Mastroianni's termination letter, Mastroianni failed "to either timely respond, or respond at all" to "fellow Marron Lawyers' staff members" and waited "until the eleventh-hour" to file necessary documents. These failures "resulted in an absolutely unacceptable situation where hours and hours of [Mastroianni's] peers' time had to address both [Mastroianni's] shortcomings and lapses in work," causing "chaos for the paralegal and admin staff, harm[ing] morale" and "increase[ing] rush attorney service charges which then had to be passed onto the client." Mastroianni's failures "undermin[ed] morale," created "distrust," and caused Mastroianni's "peers [to] doubt [Mastroianni's] word." Thus, the termination letter concluded, "if [Mastroianni's] peers and administration did not jump in and take action, [Mastroianni] would have exposed the Firm to malpractice liability."

And yet, in a firm with only eight to ten attorneys, Paul did not supervise or appoint anyone else at Marron to supervise Mastroianni's work in the SPI Litigation. Paul also did not appoint a paralegal minder for Mastroianni to ensure that Mastroianni met deadlines in the SPI Litigation. In fact, according to Mastroianni's ex parte application, when the associate "assigned the day-to-day handling of" the SPI Litigation left the firm, Marron did not assign a new associate to the SPI Litigation. At his deposition, Paul explained that the SPI Litigation "was [Mastroianni's] case," and that Mastroianni "was determining what to do on it." Paul further testified that because he viewed Koi as "[Mastroianni's] client," he "didn't supervise [Mastroianni] . . . or control the handling of the [SPI] litigation." In light of the evidence demonstrating that Paul and other Marron employees were aware of the need to

thoroughly supervise Mastroianni, a reasonable jury could conclude that the decision to let Mastroianni handle the SPI Litigation without any supervision constituted a breach of Marron's duty "to adequately supervise [its] employees." *Layton*, 789 P.2d at 1032.

Second, Marron failed to ensure that Mastroianni complied with Marron's internal policy requiring Mastroianni to add a paralegal to his CM/ECF account. In fact, Mastroianni's May 12, 2017 ex parte application stated that Mastroianni himself was not receiving ECF notifications. At least one paralegal at Marron, Mini Leano, knew that Mastroianni was not complying with Marron's policy. Marron asserts that this was "an insignificant occurrence given that all dates . . . were duly calendared by Marron," but a reasonable jury could disagree. Marron's claim that the dates were duly calendared is disputed, as Mastroianni's ex parte application stated that "events in [the SPI Litigation] . . . were inadvertently not calendared by our firm calendaring system." Even if the relevant *deadlines* were calendared by the firm, ECF notifications were necessary so that Marron's other lawyers and staff would have been notified of court *filings*, such as the district court's order to show cause, SPI's Notice of Defendant's Refusal to Participate in a Rule 26(f) Conference, and Mastroianni's ex parte application to continue the Rule 26(f) hearing—all of which would have signaled that Mastroianni was mishandling the SPI Litigation. Moreover, Paul stated that if paralegal Mini Leano had brought Mastroianni's policy violation to Paul's attention earlier, he would have terminated or at least investigated Mastroianni. Thus, a reasonable jury could find Mastroianni's failure to comply with Marron's ECF policy significant, reject Paul's attempt to deflect blame onto a paralegal, and find that Paul's failure

to "supervise[] office staff" led to an important "lapse[] in office procedure," breaching Paul and Marron's duty to supervise. *See Trousil v. State Bar*, 695 P.2d 1066, 1068 (Cal. 1985) (noting that "lapses in office procedure" due to attorney's failure to "supervise[] office staff" may constitute a violation of attorneys' duty to supervise).

In addition to the record evidence, a reasonable jury could accept the opinions of Koi's legal malpractice expert that (1) allowing an associate attorney to handle a lawsuit without any supervision breaches the duty to supervise, and (2) failure to ensure that ECF filings are received and processed by the law firm's staff breaches the duty to supervise. The malpractice expert's opinions alone suffice to create a triable issue of fact. *See Primiano*, 598 F.3d at 567.

Accordingly, Koi demonstrated that there was, at a minimum, a genuine dispute of material fact as to whether Marron breached its duty to disclose and duty to supervise, an essential element of Koi's legal malpractice and breach of fiduciary duty claims.

## B.  There is a genuine dispute as to whether Marron's conduct caused injury to Koi

We turn next to whether Koi created a triable issue of fact as to the causation element of Koi's legal malpractice, breach of fiduciary duty, and negligent supervision claims. *See Coscia*, 25 P.3d at 672; *Stanley*, 41 Cal. Rptr. 2d at 776; *Lopez*, 201 Cal. Rptr. 3d at 591. The district court granted summary judgment in Marron's favor on all three of Koi's claims because the district court concluded that Koi could not prove causation. Before considering whether Koi provided sufficient evidence to demonstrate a dispute of material fact on causation, we first determine the proper test for causation on each of Koi's claims.

The parties agree that substantial factor causation applies to Koi's legal malpractice and negligent supervision claims. *See Viner v. Sweet*, 70 P.3d 1046, 1051-52 (Cal. 2003) (substantial factor causation applies to legal malpractice claims); *Liberty Surplus Ins. Corp. v. Ledesma & Meyer Constr. Co., Inc.*, 418 P.3d 400, 405 n.5 (Cal. 2018) (substantial factor causation applies to negligent supervision claims). The parties disagree as to whether substantial factor or but for causation applies to Koi's breach of fiduciary duty claim. That dispute is ultimately immaterial, however, because on the facts of this case substantial factor causation requires us to apply the but for causation test to all of Koi's claims.

California's substantial factor test "adopts the 'but for' test of causation" with an exception for "concurrent independent causes, which are multiple forces operating at the same time and independently, each of which would have been sufficient by itself to bring about the harm." *Viner*, 70 P.3d at 1051; *see also Rutherford v. Owens-Illinois, Inc.*, 941 P.2d 1203, 1214 (Cal. 1997) (noting that the substantial factor test "reach[es] beyond [the but for test] to satisfactorily address other situations, such as those involving independent or concurrent causes in fact").

Here, the exception for concurrent independent causes does not apply because Koi's theory of causation relies on two *dependent* causes: Mastroianni's misconduct and Marron's misconduct. Koi's theory of causation is that: (1) Marron's conduct harmed Koi because it allowed *Mastroianni*'s incompetence to go un-checked, and (2) Mastroianni's incompetent conduct harmed Koi because *Marron* violated its duties to disclose material facts to Koi and supervise Mastroianni. Thus, this case is like *Viner*, in which the California Supreme Court held that the concurrent

independent causes exception does not apply when multiple "forces operated in combination" enabling each other. 70 P.3d at 1051.

Because the substantial factor causation test requires us to apply the but for causation test in this case, we apply the but for causation test to all of Koi's claims. In the context of this case, Koi must show that Koi "would have obtained a more favorable judgment or settlement in the" SPI Litigation but for Marron's conduct. *Id.* at 1052. Koi must "only 'introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of [Marron] was a cause in fact of the result.'" *Id.* at 1053 (quoting *Ortega v. Kmart Corp.*, 36 P.3d 11, 15 (Cal. 2001)). Even "a very minor force that does cause harm" suffices. *Bockrath v. Aldrich Chem. Co., Inc.*, 980 P.2d 398, 404 (Cal. 1999); *see also id.* at 403 ("The contribution of the individual cause [must] be more than negligible or theoretical." (internal quotation marks and citation omitted)). Moreover, "[t]he issue of causation may be decided as a question of law only if, under undisputed facts, there is no room for a reasonable difference of opinion." *Kurinji v. Hanna & Morton*, 64 Cal. Rptr. 2d 324, 331 (Cal. Ct. App. 1997). Here, the record leaves ample room for reasonable differences of opinion.

A reasonable jury could find that it is "more likely than not" that competent counsel would have reduced Koi's damages in the SPI Litigation. *See Viner*, 70 P.3d at 1053. In the SPI Litigation, the district court granted SPI default judgment and awarded trebled damages—the maximum amount allowed—totaling $5,266,380.68.[7] In the district

---

[7] Trebling profits is the maximum damages enhancement allowed by the Lanham Act. 15 U.S.C. § 1117(a) ("In assessing damages the court may

court's own words, it trebled damages because of Mastroianni's "refusal to participate in this litigation or to comply with discovery deadlines or lawful court orders." The district court:

- described Mastroianni as "**grossly negligent (or worse);**"

- explained that the SPI Litigation was "tainted by [Mastroianni's] conduct **from day one**;" and

- stated that Koi's default was "caused by Mastroianni's (and therefore [Koi's]) **two years of obstreperous behavior**."

In explaining why it trebled damages, the district court cited Mastroianni's misconduct while he was employed by Marron. Specifically, the district court cited Mastroianni's failure to participate in the required Rule 26(f) meet and confer and the fact that SPI had to unilaterally file a Rule 26(f) report—both of which occurred in April and May 2017, during the time that Paul Marron was spending two to three hours a day supervising Mastroianni, a Marron employee. A reasonable jury could thus disagree with Marron that "all of the significant developments that led to . . . Koi['s injury] happened after Mastroianni left" Marron. Rather, a reasonable jury could conclude that competent counsel would have avoided a trebled damages award by simply complying with counsel's discovery obligations, the Federal Rules of Civil Procedure, and the

---

enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount.").

district court's orders. This alone suffices to demonstrate a genuine dispute of fact as to whether competent counsel "would have obtained a more favorable judgment" for Koi in the SPI Litigation. *Viner*, 70 P.3d at 1052.

A reasonable jury could find that competent counsel would have reduced Koi's damages for a second, independent reason: Mastroianni's failure to introduce any evidence of Koi's costs. Under the Lanham Act, Koi could have reduced the profits used for calculating damages by presenting evidence of Koi's costs. *See* 15 U.S.C. § 1117(a). But because Mastroianni did not present any evidence of Koi's costs, the district court calculated the final damages amount solely based on Koi's alleged revenue. A reasonable jury could infer that competent counsel would have introduced *some* evidence of Koi's costs in producing, advertising, and selling the infringing products, which are medical uniforms manufactured and sold by Koi.[8]

Finally, a reasonable jury could conclude that but for Marron's conduct, Koi would have replaced Mastroianni with competent counsel. Koi's CEO Peterson submitted a declaration in support of Koi's opposition to Marron's motion for summary judgment. *See Stefanchik*, 559 F.3d at 927-28 (the nonmoving party who bears the ultimate burden of proof on an issue may oppose summary judgment by relying on affidavits). Peterson declared that, if Marron had informed Koi of Mastroianni's errors in the SPI Litigation and that Marron terminated Mastroianni because

---

[8] Before the district court, Koi submitted a declaration by Koi's attorney attesting, based on personal knowledge, that during discovery Koi produced to Marron a 9,000 page spreadsheet showing Koi's costs. Marron has never disputed that Koi produced this spreadsheet or that the spreadsheet could be presented in an admissible form at trial.

Mastroianni's litigation failures posed malpractice risks, Koi would not have agreed to substitute Marron out as counsel and would have quickly replaced Mastroianni with competent counsel. Peterson's declaration is corroborated by the fact that Koi in fact substituted Mastroianni out as counsel as soon as Koi discovered Mastroianni's litigation failures. Indeed, the dissent agrees that based on these facts a reasonable jury could infer that Koi would have replaced Mastroianni.

Therefore, there is "room for a reasonable difference of opinion," *Kurinji*, 64 Cal. Rptr. 2d at 331, as to whether Marron's actions were, at least, "a very minor force that . . . cause[d] harm" to Koi, *Bockrath*, 980 P.2d at 404. A reasonable jury could conclude that it is "more likely than not" that Koi "would have obtained a more favorable judgment" with competent counsel, and that Koi would have obtained competent counsel but for Marron's actions. *Viner*, 70 P.3d at 1052-53. Accordingly, the district court erred in granting summary judgment on Koi's legal malpractice, breach of fiduciary duty, and negligent supervision claims in favor of Marron on the ground that Koi could not establish causation.

The dissent's contrary analysis errs in three ways: it misstates and misapplies California law, inappropriately draws inferences in favor of Marron, and reaches internally inconsistent conclusions. First, the dissent repeats the district court's mistake of requiring Koi to prove the merits of the underlying case. That requirement relies on outdated California Court of Appeal decisions that are inconsistent

with the California Supreme Court's decision in *Viner,* which explained that:

> The requirement that the plaintiff prove causation should not be confused with the method or means of doing so. **Phrases such as 'trial within a trial,' 'case within a case,' 'no deal' scenario, and 'better deal' scenario describe methods of proving causation, not the causation requirement itself** or the test for determining whether causation has been established.

*Id.* at 1051 n.4 (emphasis added). In other words, proving that but for the attorney's conduct the plaintiff would have succeeded on the merits of the underlying case is merely one "method[]" of proving causation, but is "not the causation requirement itself or the test for determining whether causation has been established." *Id.* Nevertheless, the dissent would *require* Koi to prove causation through a trial within a trial on the merits of the underlying case. For example, the dissent concludes that:

- "Koi's lack of a meritorious trademark defense" is an independent cause of Koi's injury for which Marron cannot be held responsible, Dissent at 60;

- Koi cannot "proceed on claims involving legal malpractice without introducing any admissible evidence concerning the

merits of the underlying trademark dispute," Dissent at 58; and

- there is no genuine dispute of material fact as to causation because the factfinder must "speculate as to whether Koi's defenses were strong enough" to reduce Koi's damages, Dissent at 58.

The dissent thus demands from Koi precisely the type of proof that the California Supreme Court held is not required.[9]

The dissent also fundamentally misstates and misapplies the but for causation requirement. Under California law, all that Koi is required to show to prove but for causation is that Marron's actions were "*a* cause in fact of" Koi's injury, *Viner*, 70 P.3d 1053 (emphasis added), and even "a very minor force that does cause harm" suffices, *Bockrath*, 980 P.2d at 404. To meet this burden at the summary judgment stage, Koi had to show only that there is "room for a reasonable difference of opinion" whether Marron's actions were such a very minor force that caused Koi harm. *Kurinji*, 64 Cal. Rptr. 2d at 331. The dissent effectively admits that Koi has met this burden by saying:

I acknowledge that these statements [by the district court explaining why it awarded treble damages] suggest that Mastroianni's

---

[9] By requiring proof that Koi would have succeeded on the merits of the underlying claim, the dissent also mischaracterizes Koi's claim and theory of injury. Koi does not contend that competent counsel would necessarily have defeated SPI's trademark claims. As discussed, a reasonable jury may find that Marron's misconduct injured Koi even without evidence that Koi would have defeated SPI's trademark claims.

actions while employed by Marron were a factor in the district court's decision to treble damages. In that limited sense, Mastroianni's misconduct *could* be described as a cause of Koi's injury because it contributed to the ultimate result.

Dissent at 56 (emphasis added).

The dissent nevertheless concludes that Mastroianni's misconduct was not a but for cause of Koi's injury because "treble damages were a '*possible* outcome' under the Lanham Act." Dissent at 56 (emphasis added). The dissent in effect requires Koi to prove that Marron's actions were the *only* cause of Koi's injury and requires Koi to disprove every other hypothetical possible cause of Koi's injury. This is contrary to California law and Koi's burden on summary judgment.

Second, the dissent's causation analysis repeatedly and improperly draws inferences in favor of Marron, the summary judgment movant. On summary judgment, we are required to "constru[e] the facts in the light most favorable to the nonmoving party and draw[] all reasonable inferences in that party's favor." *Merrick*, 867 F.3d at 1145. The dissent repeatedly fails to do so. For example, the dissent speculates that "the district court [] *could* have awarded treble damages even if Mastroianni had never mishandled the case." Dissent at 57 (emphasis added). The dissent also speculates that "if Koi really had a meritorious trademark defense, the likelihood that the district court would have entered a default judgment awarding treble damages . . . is extremely low." Dissent at 63. The dissent ignores the district court's own explanation for its damages award, which the district court stated was the result of Mastroianni's "two years of

obstreperous behavior" and his "conduct from day one." Drawing all reasonable inference in favor of Koi, a reasonable jury could find that the district court would *not* have trebled damages but for such gross misconduct.[10]

Similarly, the dissent's assertion that all of Koi's injury resulted from Mastroianni's misconduct after he left Marron draws inferences in Marron's favor. Dissent at 62. Mastroianni's misconduct after leaving Marron is certainly relevant to the causation analysis but does not entitle Marron to judgment as a matter of law. As discussed, construing the record in Koi's favor, as we must, a reasonable jury could find that Marron's misconduct while Mastroianni was employed at Marron injured Koi.

Third, the dissent's causation analysis is internally inconsistent. The dissent agrees that there is a genuine dispute of material fact on causation as to Koi's breach of fiduciary duty claim because "Mastroianni's post-Marron misconduct can be attributed to Marron." Dissent at 65. At the same time, however, the dissent asserts that "Marron cannot be held responsible for . . . Mastroianni's post-

---

[10] Although the dissent agrees that we must infer that Koi would have replaced Mastroianni, the dissent extensively discusses two pieces of evidence that the dissent argues demonstrate otherwise. In doing so, the dissent improperly draws inferences in favor of Marron and speculates that Koi did not believe its own attorney. *See* Dissent at 66-67. These pieces of evidence merely underscore that there are genuine disputes of fact. Moreover, the dissent ignores crucial evidence supporting Koi's argument that Koi would have replaced Mastroianni but for Marron's actions. The dissent states that the only evidence supporting Koi's argument are the Peterson declaration and Koi's interrogatory responses. Dissent at 68. As discussed, however, the fact that Koi *in fact* replaced Mastroianni when Koi discovered his misconduct is strong evidence from which a reasonable jury could infer that Koi would have replaced Mastroianni but for Marron's actions. *See supra* at 38.

termination conduct" and thus concludes that there is no genuine dispute of material fact on Koi's legal malpractice and negligent supervision claims. Dissent at 62. The dissent does not reconcile these contradictory conclusions. Moreover, the breach of fiduciary duty and legal malpractice claims are based on the very same alleged breach of Marron's duties to disclose and supervise, and the dissent agrees that the same causation standard applies to all three claims.[11] *See* Dissent at 50. The dissent does not explain why

---

[11] On appeal, Koi explicitly incorporated its breach of fiduciary duty arguments into Koi's legal malpractice arguments and specifically stated that Marron is liable for legal malpractice because "Marron breached its duties to adequately supervise Mastroianni and disclose significant developments in Marron's representation of Koi." Thus, the same two duties underlie Koi's breach of fiduciary duty claim and legal malpractice claim. *See supra* at 23-24. Contrary to the dissent's contention, Koi mentioned this same argument in the district court in Koi's opposition to Marron's motion for summary judgment: "Marron owed *professional* and fiduciary duties to Koi, *including the duty to disclose material facts* such as Mastroianni's malpractice," and extensively cited the duties as set forth in the California Rules of Professional Conduct. Indeed, Marron understood Koi's argument, and Marron conceded in its motion for summary judgment reply brief that "California cases and ethics opinions recognize a duty to disclose to a client facts giving rise to a potential legal malpractice claim." In any event, even if Koi's arguments on the legal malpractice claim are different on appeal than before the district court, that would not preclude us from reviewing those arguments because "claims, not arguments[,] are preserved on appeal." *United States v. Wahid*, 614 F.3d 1009, 1016 (9th Cir. 2010); *see also Yee v. City of Escondido*, 503 U.S. 519, 534 (1992) (once a "claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below"). The dissent relies on an out of circuit case to read *Yee* overly narrowly, but the U.S. Supreme Court held in *Yee* that the plaintiff preserved on appeal a Fifth Amendment *regulatory* taking argument because the plaintiff raised a Fifth Amendment *physical* taking argument in the trial and appellate courts even though the two arguments

Mastroianni's post-termination conduct can be attributed to Marron for Koi's breach of fiduciary duty claim but not for Koi's legal malpractice and negligent supervision claims. Thus, there is a genuine dispute of material fact as to the causation element on all three of Koi's claims.

## C.     Marron's counterarguments are unavailing

Marron asserts counterarguments challenging Koi's ability to demonstrate a breach of the duty to disclose or that Marron's conduct caused Koi injury, and Koi's claim for negligent supervision. None is persuasive.

### 1.     Marron's argument that Koi cannot demonstrate a breach of the duty to disclose fails

Marron argues it is undisputed that Marron did not breach its duty to disclose because Marron's expert opined that "Marron's duty to keep Koi reasonably informed . . . did not require Marron to communicate events in the SPI Litigation that resulted in no material adverse consequences to Koi." Instead, Marron argues that only Mastroianni's conduct after he was fired by Marron caused material adverse consequences to Koi.

Marron's argument fails for three reasons. First, Koi's expert disagreed with the conclusion of Marron's expert, and we do not weigh conflicting expert opinions at summary judgment. *See Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1020 (9th Cir. 2022) (district court erred by "weigh[ing] the evidence on record," including expert opinions, because those are "factfinding steps" reserved for

---

relied on entirely different doctrine and case law. What mattered, according to the Supreme Court, was that both are arguments in support of a Fifth Amendment takings claim.

the jury). Second, Marron's argument and Marron's expert opinion also erroneously assume that there is no triable issue as to whether Marron's conduct caused injury to Koi. That is a disputed fact, as explained above, because the award of default judgment against Koi was based at least in part on conduct that occurred while Koi was still represented by Marron. Finally, Marron fails to acknowledge that a reasonable jury could infer that Marron's failure to warn Koi about Mastroianni's malpractice risks and serious mistakes in the SPI Litigation is precisely *why* Mastroianni was still counsel of record in the SPI Litigation after being terminated by Marron.

## 2. Marron's challenges to Koi's ability to demonstrate causation fail

Marron raises two counterarguments on causation. First, Marron argues that Koi itself is to blame for Koi's injuries. Second, Marron attempts to break the chain of causation by arguing that Peterson's declaration is self-serving and cannot be considered on summary judgment. We address each in turn.

First, Marron argues that Koi itself is to blame for Koi's injuries, and thus, Marron cannot be held liable for Koi's damages. In support of this argument, Marron relies on Magistrate Judge Standish's observation that Koi "knew or should have known long ago that its case was not being properly litigated" but "did not care to find out" and instead "act[ed] like the proverbial ostrich, putting its head in the sand for years." "In other words, [Koi] was not blameless."

Although Marron's argument that Koi bears at least some of the blame for causing its own injuries is not without merit, Marron misunderstands the legal significance of this fact. Koi's own blameworthiness affects only the *amount* of

damages for which Marron is responsible, but not whether Marron can be found liable in the first place. Under California's "principles of comparative [fault] . . . a party is responsible for his or her share of negligence and the harm caused thereby." *Mitchell v. Gonzales*, 819 P.2d 872, 920-21 (Cal. 1991). The relative substantiality of Marron's and Koi's contributions to Koi's damages will determine Marron's and Koi's "part of the responsibility, if any, for the claimed *damages*," but does *not* affect whether Marron is liable in the first place. *Yale v. Browne*, 215 Cal. Rptr. 3d 266, 273 (Cal. Ct. App. 2017) (emphasis added). Marron is liable to Koi so long as Marron caused more than a "negligible or theoretical" amount of harm, *Bockrath*, 980 P.2d at 403 (citation omitted), even if that was only "an insubstantial contribution" to Koi's total damages, *Mitchell*, 819 P.2d at 920 (citation omitted). As explained above, a reasonable jury could conclude Marron caused more than a negligible amount of harm to Koi, and thus a reasonable jury could find Marron liable to Koi. What part of Koi's damages Marron is responsible for is a separate question that is not at issue in this appeal.

Second, Marron attempts to break the chain of causation by arguing that Peterson's declaration is self-serving and thus cannot create a genuine dispute of fact. We have held, however, that generally self-serving testimony can create a genuine dispute of material fact. *See In re Kaypro*, 218 F.3d 1070, 1075 (9th Cir. 2000) ("[T]he 'self-serving' nature of the testimony [does] not disqualify it under Fed. R. Civ. P. 56(e) . . . .").

It is true, as we explained in *Villiarimo v. Aloha Island Air*, 281 F.3d 1054 (9th Cir. 2002), and *Federal Trade Commission v. Publishing Clearing House*, 104 F.3d 1168 (9th Cir. 1997), that self-serving testimony that suffers from

other deficiencies cannot create a genuine dispute of material fact. But this case is not like *Villiarimo* or *Publishing Clearing House*. In *Villiarimo*, we discounted a factual assertion in plaintiff's self-serving affidavit because it was "uncorroborated" and plaintiff "provide[d] no indication how she knows this to be true." 281 F.3d at 1059 n.5, 1061. Meanwhile, in *Publishing Clearing House*, the self-serving testimony was "conclusory . . . lacking detailed facts and any supporting evidence." 104 F.3d at 1171. Here, by contrast, Peterson had personal knowledge of the statements made in her declaration as Koi's CEO, and those statements were supported and corroborated by other evidence, including the fact that Koi fired Mastroianni when Koi discovered Mastroianni's gross misconduct. Thus, Peterson's declaration does not suffer from the same concerns identified in *Villiarimo* or *Publishing Clearing House* and is a proper basis on which Koi may rely to oppose summary judgment. *See Stefanchik*, 559 F.3d at 927-28.

### 3. Marron's challenges to Koi's negligent supervision claim fail

In addition, Marron raises two challenges to Koi's negligent supervision claim. Marron first argues that claim fails because "there can be no liability for negligent supervision in the absence of knowledge by the principal that the agent or servant was a person who could not be trusted to act properly without being supervised." *Juarez v. Boy Scouts of Am., Inc.*, 97 Cal. Rptr. 2d 12, 25 (Cal. Ct. App. 2000) (internal quotation marks and citation omitted); *see also Z.V. v. County of Riverside*, 189 Cal. Rptr. 3d 570, 581 (Cal. Ct. App. 2015) (same). According to Marron, Mastroianni was an experienced litigator who did not require supervision at all. Construing the facts and drawing all inferences in Koi's favor, however, Koi presented sufficient

evidence for a reasonable jury to conclude that Marron knew that Mastroianni "was a person who could not be trusted to act properly without being supervised." *Juarez*, 97 Cal. Rptr. 2d at 25. Marron's own emails and termination letter document that Mastroianni mismanaged cases, repeatedly missed and ignored deadlines, and waited "until the eleventh-hour" to file necessary documents. Paul described Mastroianni as a "malpractice risk" due to the "repeated problems on cases [Mastroianni] was responsible for" and Paul himself spent two to three hours a day in April and May 2017 supervising Mastroianni's work. Finally, Paul in fact appointed a paralegal to serve as Mastroianni's "minder" in at least one case. A reasonable jury could thus infer that Paul and Marron knew that Mastroianni required supervision and had specific prior knowledge of Mastroianni's "propensity to do the bad act." *Z.V.*, 189 Cal. Rptr. 3d at 581.[12]

Marron also argues that Koi's negligent supervision claim fails because the injury occurred despite Marron's best efforts. In support of this argument, Marron relies on *Thompson v. Sacramento City Unified School District*, 132 Cal. Rptr. 2d 748 (Cal. Ct. App. 2003). In *Thompson*, the California Court of Appeal held that "[w]hen an injury occurs despite a defendant's efforts to provide security or supervision, it is relatively easy to claim that, ipso facto, the security or supervision provided was ineffective. Without more, such claims fail." *Id.* at 762. *Thompson* is inapposite. First, Koi alleges it was injured *because of* Marron's *insufficient* supervisory efforts, not that Koi was injured

---

[12] Marron's argument that summary judgment is required because "Marron demonstrated that at the time Marron hired Mastroianni, he posed no particular risk of harm to Koi" thus misses the mark. Koi's claim is not that Marron was negligent in *hiring* Mastroianni, but that Marron was negligent in *supervising* Mastroianni.

"despite" Marron's supervisory efforts. Second, *Thompson* was about schools' supervisory duties towards their students, not employers' supervisory duties towards employees they know are a liability risk.

Accordingly, none of Marron's counterarguments cause us to depart from our conclusion that there are genuine disputes of material facts that preclude summary judgment in this case.

## CONCLUSION

There are genuine disputes of material facts as to whether Marron breached its duties to Koi and whether Marron's conduct caused Koi harm. Thus, the district court erred in granting summary judgment in favor of Marron on Koi's legal malpractice, breach of fiduciary duty, and negligent supervision claims. Accordingly, we reverse the district court's grant of summary judgment in Marron's favor and remand for further proceedings consistent with this opinion.

**REVERSED and REMANDED.**

RONALD LEE GILMAN, Circuit Judge, concurring in part and dissenting in part.

I respectfully disagree with the majority's analysis regarding the causation element of Koi's three claims. In my view, Koi has failed to present sufficient evidence of causation to survive summary judgment on its legal-malpractice and negligent-supervision claims, so I would affirm the district court's ruling on those claims. At the same time, I believe that a genuine dispute of material fact exists regarding the causation element of Koi's breach-of-fiduciary-duty claim, albeit for reasons different from those identified by the majority. I accordingly concur in the reversal of summary judgment on that claim.

## A. The substantial-factor causation standard applies to all of Koi's claims

I agree with the majority that the substantial-factor causation standard applies to each of Koi's claims. As the majority observes, the parties do not dispute that this standard governs Koi's legal-malpractice and negligent-supervision claims. Maj. Op. 34. The parties diverge, however, on the applicable causation standard for Koi's breach-of-fiduciary-duty claim. Koi contends that the substantial-factor standard applies, whereas Marron argues that the more stringent but-for standard governs.

The majority concludes that this dispute is "ultimately immaterial . . . because on the facts of this case substantial factor causation requires us to apply the but for causation test." *Id.* In my view, however, the distinction is consequential because I believe that Koi has raised a genuine dispute of material fact only as to substantial-factor causation, not but-for causation, regarding its breach-of-

fiduciary-duty claim.  I will therefore explain below why I believe that the former standard applies.

A "breach of fiduciary duty can be based upon either negligence or fraud, depending on the circumstances." *Tribeca Cos., LLC v. First Am. Title Ins. Co.*, 192 Cal. Rptr. 3d 354, 375 (Cal. Ct. App. 2015).  For "claims of breach of fiduciary duty arising from negligent conduct," the plaintiff must prove that it would not have suffered damages but for the defendant's breach.  *Knutson v. Foster*, 236 Cal. Rptr. 3d 473, 484, 486 (Cal. Ct. App. 2018).  On the other hand, the more lenient "[s]ubstantial factor causation is the correct causation standard for an intentional breach of fiduciary duty"—that is, the plaintiff need only "establish 'a reasonable basis for the conclusion that it was more likely than not that the conduct of the defendant was a substantial factor in the result.'"  *Id.* (quoting *Stanley v. Richmond*, 41 Cal. Rptr. 2d 768, 782 (Cal. Ct. App. 1995)).  The relevant question is thus whether Koi's breach-of-fiduciary-duty claim is based on negligence as opposed to intentional misconduct by Marron.

I believe that Koi's claim is based on Marron's intentional misconduct.  Koi's complaint alleges numerous intentional acts by Marron, including that Marron "kept Koi in the dark as to the true status of the litigation," "failed to disclose material information to Koi relating to the SPI Litigation," "knew something was wrong but failed to timely advise Koi of Mastroianni's improper conduct," and "failed to disclose to Koi the numerous instances of malpractice occasioned by Mastroianni's conduct."  Moreover, Koi submitted substantial summary-judgment evidence to support those allegations, which Marron does not appear to dispute.

California courts have held that such acts are sufficient to support an intentional breach-of-fiduciary-duty claim. *See, e.g.*, *Knutson*, 236 Cal. Rptr. 3d at 486–87 (sustaining an intentional breach-of-fiduciary-duty claim where the defendant engaged in various "intentional acts" by "failing to disclose" material information to his client). Indeed, the California Supreme Court has held that when a defendant has "an affirmative obligation to make full disclosure, [] the non-disclosure itself is a 'fraud,'" even if "the defendant makes no active misrepresentation." *Amen v. Merced Cnty. Title Co.*, 375 P.2d 33, 36 (Cal. 1962).

Marron nevertheless argues that "Koi's fiduciary duty claim against Marron is based on negligence" because of the wording in Koi's complaint. First, whereas Koi's breach-of-fiduciary-duty claim against Mastroianni is labeled "Intentional Breach of Fiduciary Duty" (First Claim for Relief), its separate breach-of-fiduciary-duty claim against Marron is simply titled "Breach of Fiduciary Duty" (Third Claim for Relief). This, according to Marron, suggests that Koi specifically intended not to plead intentionality against Marron. Second, whereas Koi's claim against Mastroianni alleges that "Mastroianni's intentional breaches of fiduciary duty were a substantial factor in causing harm to Koi," its claim against Marron omits any mention of substantial-factor causation. Marron argues that this further indicates that Koi did not intend for the causation standard for an intentional breach to apply to Marron.

Although the above language might indicate inartful pleading on Koi's part, it falls short of foreclosing an intentional breach-of-fiduciary-duty claim against Marron. Under the liberal federal pleading standard, "[p]leadings must be construed so as to do justice," and "no technical form is required." Fed. R. Civ. P. 8(d)(1), (e). "Specific

legal theories need not be pleaded so long as sufficient factual averments show that the claimant may be entitled to some relief." *Fontana v. Haskin*, 262 F.3d 871, 876–77 (9th Cir. 2001).

Here, although Koi did not use the word "intentional" to describe its fiduciary-duty claim against Marron, Koi's complaint contains ample "factual averments" to support intentionality. I therefore conclude that Koi adequately pleaded a claim based on intentional breach, which, like its claims based on legal malpractice and negligent supervision, requires that Koi establish only substantial-factor causation.

## B. Marron is entitled to summary judgment on Koi's legal-malpractice and negligent-supervision claims, but not on Koi's breach-of-fiduciary-duty claim

In evaluating substantial-factor causation, the California Supreme Court has "definitively adopted" the test from the Restatement Second of Torts. *S. Coast Framing, Inc. v. Workers' Comp. Appeals Bd.*, 349 P.3d 141, 146 (Cal. 2015). That test has two steps. The first step "adopts the 'but for' test of causation." *Viner v. Sweet*, 70 P.3d 1046, 1051 (Cal. 2003). At this step, causation exists if the plaintiff's injuries would not have occurred but for the defendant's actions, but it does not exist "if the harm would have been sustained even if" the defendant's misconduct had not occurred. Restatement (Second) of Torts § 432 (1965).

The second step "provides for an exception" to the but-for standard. *Viner*, 70 P.3d at 1051. At this step, the factfinder must determine whether "two forces are actively operating, one because of the [defendant's misconduct], the other not because of any misconduct on his part, and each of itself is sufficient to bring about" the claimed injury. Restatement (Second) of Torts § 432. If that is true, then the

defendant's misconduct "may be found to be a substantial factor in bringing it about." *Id.* Causation thus exists in situations where there are "'concurrent independent causes,' 'combined force criteria,' [or] 'multiple sufficient causes.'" *Viner*, 70 P.3d at 1051 (citations omitted); *see also Rutherford v. Owens-Ill., Inc.*, 941 P.2d 1203, 1214 (Cal. 1997) (explaining that although the "substantial factor standard generally produces the same results as does the 'but for' rule of causation," it also "reach[es] beyond [the but-for test] to satisfactorily address other situations, such as those involving independent or concurrent causes in fact").

### a. *Koi has failed to raise a genuine dispute of material fact as to but-for causation for any of its claims*

In cases involving legal malpractice, the but-for standard requires the plaintiff to "establish that *but for* the alleged negligence of the defendant attorney, the plaintiff would have obtained a more favorable judgment or settlement in the action in which the malpractice allegedly occurred." *Viner*, 70 P.3d at 1052 (emphasis in original). "[T]he crucial causation inquiry is *what would have happened* if the defendant attorney had not been negligent." *Id.* (emphasis in original). "This is so because the very idea of causation necessarily involves comparing historical events to a hypothetical alternative." *Id.* But-for causation is thus generally proven through "a 'trial-within-a-trial' of the underlying case, in which the malpractice jury must decide what a reasonable jury or court would have done if the underlying matter had been tried." *Namikas v. Miller*, 171 Cal. Rptr. 3d 23, 29 (Cal. Ct. App. 2014).

Accordingly, to establish but-for causation at the summary-judgment stage, Koi had to submit sufficient

evidence for a reasonable jury to find that, absent Marron's malpractice (*i.e.*, had the SPI Litigation been handled by competent counsel), Koi would not have suffered its claimed injury (the $5,266,380.68 damages award, representing three times its alleged profits from selling infringing products). The majority concludes that Koi did so based on two factors: (1) a purported 9,000-page spreadsheet reflecting Koi's production costs, which could have "reduced the profits used for calculating damages," and (2) statements by the district court indicating that Mastroianni's mishandling of the case while employed by Marron contributed to its decision to treble the damages. Maj. Op. 35–37. But neither of these factors suffices to carry Koi's summary-judgment burden.

First, the majority errs in considering the purported 9,000-page spreadsheet because the spreadsheet was neither submitted with Koi's summary-judgment papers below nor included in the appellate record. The spreadsheet was never authenticated by a witness with personal knowledge of its contents, *see* Fed. R. Evid. 901, and Koi's unsupported assertions about what it contains (including the declaration from Koi's attorney that the majority cites, Maj. Op. 37 n.8) constitute inadmissible hearsay, *see* Fed. R. Evid. 802. *See also Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988) ("It is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment."). The spreadsheet therefore is not properly part of the summary-judgment record. *See* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials *in the record*." (emphasis added)). Accordingly, the record contains no admissible evidence upon which a factfinder could conclude that Koi incurred production costs.

Second, the majority's reliance on the district court's statements concerning Mastroianni's misconduct misapprehends the proper inquiry regarding but-for causation. I acknowledge that these statements suggest that Mastroianni's actions while employed by Marron were a factor in the district court's decision to treble damages. In that limited sense, Mastroianni's misconduct could be described as a cause of Koi's injury because it contributed to the ultimate result. But the relevant standard at this step is *but-for* causation, which requires more: Koi must show not only that Mastroianni's actions *contributed* to the treble-damages award, but that they were *necessary* to produce it. In other words, Koi "must establish that *but for* the alleged negligence of [Mastroianni], [Koi] would have obtained a more favorable judgment." *See Viner*, 70 P.3d at 1052 (emphasis in original).

Put differently, the question is whether Koi could legally have still been subjected to treble damages even in the "hypothetical alternative" reality in which Koi was represented by competent counsel. *See id.* The answer is "yes" because Koi admits that treble damages were a "possible outcome" under the Lanham Act. *See also* 15 U.S.C. § 1117(a) ("In assessing damages[,] the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount.").

Critically, the types of misconduct in which Mastroianni engaged—failing to participate in discovery, to follow procedural rules, and to comply with court orders—are not the only "circumstances" that can justify enhanced damages. Courts may instead treble damages whenever doing so is "just," *see id.*, including for the purpose of "compensat[ing] a mark holder," *see Skydive Ariz., Inc. v. Quattrocchi*, 673

F.3d 1105, 1114 (9th Cir. 2012). The district court thus could have awarded treble damages even if Mastroianni had never mishandled the case; for example, if it concluded that such an award was necessary to fully compensate SPI.

Consequently, to establish but-for causation at the summary-judgment stage, Koi was required to raise a genuine dispute that, with competent counsel, the district court would not have awarded treble damages against it. To do so, Koi would have had to present at least some evidence concerning SPI's underlying trademark claims (*e.g.*, evidence of Koi's production costs, evidence that Koi lacked intent, evidence concerning the effect on SPI's sales, etc.) in order to demonstrate that the "circumstances of the case" would not have justified treble damages. Yet the summary-judgment record is entirely devoid of any evidence concerning the merits of the SPI Litigation. Indeed, Koi itself acknowledges as much. There is thus no evidence whatsoever upon which a factfinder could "decide what a reasonable . . . court would have done" with respect to the trebling of damages. *See Namikas*, 171 Cal. Rptr. 3d at 29.

For this reason, the majority's assertion that "a reasonable jury could conclude that competent counsel would have avoided a trebled damages award by simply complying with counsel's discovery obligations, the Rules of Civil Procedure, and the district court's orders" is unconvincing. Maj. Op. 36–37. This assertion assumes that if competent counsel had handled the case, then Koi would have clearly avoided treble damages based on the merits of the case. But under California law, that is a fact that Koi must establish, not an assumption that this court can make on summary judgment. *See Viner*, 70 P.3d at 1052; *Namikas*, 171 Cal. Rptr. 3d at 29. And because Koi has the burden of proof on this issue, the absence of any admissible

evidence supporting that fact obviates the inference that the district court awarded treble damages solely because of Mastroianni's misconduct. Koi's summary-judgment evidence thus fails to establish but-for causation as a matter of law.

In holding to the contrary, the majority is effectively allowing Koi to proceed on claims involving legal malpractice without introducing any admissible evidence concerning the merits of the underlying trademark dispute. But this holding runs afoul of "more than 120 years" of California precedent. *See Viner*, 70 P.3d at 1052. As California courts have repeatedly held, the "established rule of this state (and most others) [is] that one who establishes malpractice on the part of his attorney in prosecuting or defending a lawsuit *must also prove that careful management of it would have resulted in recovery of a favorable judgment*." *Mattco Forge, Inc. v. Arthur Young & Co.*, 60 Cal. Rptr. 2d 780, 787 (Cal. Ct. App. 1997) (emphasis added) (quoting *Campbell v. Magana*, 8 Cal. Rptr. 32, 33 (Cal. Ct. App. 1960)); *see also id.* at 788 (explaining that plaintiffs must "prove *both* the malpractice *and the underlying lawsuit*" (emphasis added)).

"The purpose of this requirement . . . is to safeguard against speculative and conjectural claims." *Viner*, 70 P.3d at 1052. Yet a "speculative and conjectural" claim is exactly what the majority's ruling preserves—one that leaves the factfinder with no choice but to speculate as to whether Koi's defenses were strong enough to preclude treble damages, if only it had had competent counsel.

In sum, because Koi introduced no admissible evidence showing that it would have clearly avoided treble damages if only it had had competent counsel, I conclude that Koi has

failed to establish but-for causation at the summary-judgment stage. I will therefore proceed to the second step of the substantial-factor analysis and consider whether Koi's evidence falls within the limited exception to but-for causation based on a concurrent independent cause.

### b. Koi has failed to raise a genuine dispute of material fact that Marron's actions were a concurrent independent cause of Koi's damages for its legal-malpractice and negligent-supervision claims

The second step of the substantial-factor analysis requires Koi to show that Marron's actions were a "concurrent independent cause" of its damages. *See Viner*, 70 P.3d at 1051. To do so, Koi must prove (1) the existence of independent causes of its damages that are not attributable to Marron, and (2) that Marron's conduct was nevertheless "sufficient in the absence of the other[ causes] to bring about" Koi's damages. *See id.*; *see also* Restatement (Second) of Torts § 432. This step thus permits a plaintiff to establish causation even where causes unrelated to the defendant's misconduct could have produced the plaintiff's injury (thereby preventing the plaintiff from establishing but-for causation), so long as the defendant's conduct was independently sufficient to cause the harm.

The majority gives short shrift to this second step, reasoning that "the exception for concurrent independent causes does not apply because Koi's theory of causation relies on two *dependent* causes: Mastroianni's misconduct and Marron's misconduct" during Marron's representation of Koi. Maj. Op. 34 (emphasis in original). But this reasoning again misapprehends the relevant inquiry. By focusing solely on "Koi's theory of causation," the majority

necessarily identifies only causes that *are* attributable to Marron ("Mastroianni's misconduct and Marron's misconduct") because Koi's theory is focused on imposing liability on Marron.

The concurrent-independent-causes inquiry, however, asks a different question:  whether there are causes *not* attributable to Marron—*i.e.*, causes independent of Koi's theory—that could potentially explain Koi's damages.  This inquiry requires examining facts unrelated to Marron's conduct that might have produced the same harm.

With respect to Koi's claims for legal malpractice and negligent supervision, I believe that there are two potential causes of Koi's damages that are not attributable to Marron. The first is Koi's lack of a meritorious trademark defense. As explained above, because Koi presented no proof that the district court would have declined to impose treble damages if Koi had had competent counsel, the opposite must be presumed—*i.e.*, that Koi would have been subjected to treble damages regardless of counsel's performance.  And because Koi's lack of a viable trademark defense is obviously not Marron's fault, this deficiency constitutes an independent potential cause of Koi's damages.

The second potential cause of Koi's damages is Mastroianni's continued mishandling of the SPI Litigation long after he was terminated by Marron.  The majority's recitation of the facts does not address what occurred during this period; it instead simply notes that "Mastroianni continued to represent Koi in the SPI Litigation while at Bloom" and that the case "ended with the district court imposing terminating sanctions on Koi." Maj. Op. 15.  This included "granting default judgment to SPI" and "award[ing] SPI $5,266,380.68 in damages." *Id.* at 15–16.

But the record reflects that significant developments occurred after Mastroianni left Marron, including additional misconduct that contributed to the district court's decision to impose sanctions and treble damages. Those facts are summarized below.

I begin with the fact that after Marron terminated Mastroianni in May 2017, Mastroianni joined Bloom, where his mismanagement of the case continued. Despite receiving a reminder from Marron associate Bill Hendricks, Mastroianni immediately missed a June 19, 2017 deadline to serve timely responses to SPI's discovery requests. This caused SPI to file an ex parte application on July 27, 2017, asserting that Mastroianni had stopped responding to SPI's communications, making it impossible to confer about Koi's discovery deficiencies. The magistrate judge thereupon ordered Koi to show cause why it should not be sanctioned for failing to participate in discovery.

In response, Mastroianni continued to evade Koi's discovery obligations by serving boilerplate objections to SPI's discovery requests, ignoring the requests of SPI's counsel to confer, and failing to appear at a discovery hearing before the magistrate judge. As a result, on October 3, 2017, the magistrate judge issued an order compelling Koi to produce complete discovery responses and instructing SPI to move for sanctions. Mastroianni still failed to comply.

On November 16, 2017, SPI filed a motion for case-terminating sanctions, which the magistrate judge recommended be granted. Six months later, however, the district court declined to adopt the magistrate judge's recommendation and instead sanctioned Koi and Mastroianni jointly in the amount of $250,000, warning that case-terminating sanctions would follow if payment was not

made within 60 days.  Mastroianni failed to inform Koi of this sanction, and Koi did not pay it.

Accordingly, the district court imposed case-terminating sanctions and entered a default judgment on October 4, 2018, observing that "Koi repeatedly, unjustifiedly [sic], and continuously failed to comply with Magistrate Judge Gail Standish's lawful orders."  The court then trebled the profits that Koi allegedly earned from the infringing products as a basis to award SPI $5,266,380.68 in damages.

These facts reflect that Koi's injury—the default judgment and the treble-damages award—did not arise until 16 months after Marron's involvement in the SPI Litigation had ceased, and only after Mastroianni had engaged in substantial additional misconduct.  Marron cannot be held responsible for that later misconduct under theories of either legal malpractice or negligent supervision because both its representation of Koi and its employment of Mastroianni had long since ended.  *See Am. Cas. Co. v. O'Flaherty*, 67 Cal. Rptr. 2d 539, 543 (Cal. Ct. App. 1997) (explaining that an attorney generally owes no duty of care without an attorney-client relationship); *Phillips v. TLC Plumbing, Inc.*, 91 Cal. Rptr. 3d 864, 872 (Cal. Ct. App. 2009) (explaining that "an employer does not owe a duty of care to a customer or other third party for posttermination tortious acts committed by a former employee or agent after termination of his or her employment or agency").  Mastroianni's post-termination misconduct is thus another independent cause that potentially accounts for Koi's damages.

Given the existence of these two potential causes of Koi's damages that are not attributable to Marron, I next consider whether, assuming those causes did not exist, any conduct that is attributable to Marron would have

nonetheless been "sufficient by itself to bring about the harm." *See Viner*, 70 P.3d at 1051. Through Koi's legal-malpractice and negligent-supervision claims, it seeks to hold Marron responsible for Mastroianni's misconduct during his employment with Marron on the theory that Marron breached both its duty of care as Koi's counsel and its duty to supervise as Mastroianni's employer. *See, e.g.*, *Layton v. State Bar of Calif.,* 789 P.2d 1026, 1032 (Cal. 1990). The question, then, is whether, assuming that Koi had a meritorious trademark defense and that Mastroianni had not engaged in post-Marron misconduct, Mastroianni's malpractice while at Marron would have been independently sufficient to result in the default judgment and the treble-damages award.

The answer is clearly "no." Koi concedes that Mastroianni's only misconduct while at Marron was (1) his failure to timely respond to SPI's complaint (later remedied by a stipulated extension), (2) his failure to confer with SPI's counsel and help prepare the joint Rule 26 report, and (3) his failure to coordinate a timely response to SPI's discovery requests due on June 19, 2017. Such conduct falls far short of the "extreme circumstances" required to justify the case-terminating sanctions against Koi. *See Dreith v. Nu Image, Inc.*, 648 F.3d 779, 788 (9th Cir. 2011) (explaining that "dismissal is a harsh penalty imposed only in extreme circumstances").

Furthermore, if Koi really had a meritorious trademark defense, the likelihood that the district court would have entered a default judgment awarding treble damages—the maximum amount recoverable under the Lanham Act—is extremely low. *See Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986) (explaining that courts consider "the merits of [the] plaintiff's substantive claim" when deciding

whether to enter a default judgment); *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) (noting that "claims which are legally insufficient[] are not established by default"). Indeed, the district court specifically noted that Koi's trademark defense was "dubious," which likely provided substantial additional justification for its decision to impose treble damages.

Koi therefore cannot show that Marron's conduct was sufficient by itself to bring about Koi's damages under its theories of either legal malpractice or negligent supervision. And because Koi fails to raise a genuine dispute of material fact as to either concurrent independent causation or but-for causation, it cannot establish substantial-factor causation as a matter of law. I therefore find no error in the district court's grant of summary judgment on those two claims. Accordingly, I respectfully dissent from the majority's contrary ruling.

### c. Koi has raised a genuine dispute of material fact on its theory that Marron's actions were a concurrent independent cause of Koi's damages for its breach-of-fiduciary-duty claim

I now turn to Koi's breach-of-fiduciary-duty claim. In contrast to Koi's other claims, I believe that Koi has presented sufficient evidence at the summary-judgment stage for a reasonable jury to find that Marron's actions were a concurrent independent cause of Koi's damages. As the majority observes, Koi identifies two fiduciary duties that Marron allegedly breached: (1) a duty to disclose material developments in the SPI Litigation, including Mastroianni's mishandling of the case, and (2) a duty to supervise Mastroianni as his employer. Maj. Op. 23–24. I believe that only the former gives rise to a genuine dispute of material

fact as to causation under the breach-of-fiduciary-duty claim.

With respect to the duty to supervise, the concurrent-independent-causation analysis mirrors that for Koi's legal-malpractice and negligent-supervision claims. As explained above, there are two independent causes unrelated to Marron's alleged failure to supervise that potentially explain Koi's damages—Koi's lack of a meritorious trademark defense and Mastroianni's post-Marron misconduct. Marron cannot be held responsible for either because the merits of Koi's trademark case have nothing to do with Marron, and Marron had no duty to supervise Mastroianni after his termination in May 2017. *See Phillips*, 91 Cal. Rptr. 3d at 872.

Furthermore, even assuming that neither of these independent causes existed, Mastroianni's malpractice while employed by Marron—which Koi attributes to Marron's lack of supervision—would not have been "sufficient by itself to bring about" the default judgment and the treble-damages award well over a year later. *See Viner*, 70 P.3d at 1051. Koi's breach-of-fiduciary-duty claim based on Marron's duty to supervise therefore fails as a matter of law.

The analysis differs with respect to Marron's duty to disclose. Mastroianni's post-Marron misconduct can be attributed to Marron because Koi's theory is that Marron's failure to disclose Mastroianni's misconduct lulled Koi into not promptly replacing Mastroianni with competent counsel. Koi contends, in other words, that Marron's breach of its fiduciary duty to disclose was "sufficient to bring about" Koi's damages because it enabled Mastroianni to continue mishandling the trademark case, which ultimately resulted

in the district court issuing the default judgment and the treble-damages award. *See Viner*, 70 P.3d at 1051.

This theory, of course, requires Koi to prove that Marron's nondisclosure was in fact the cause of Mastroianni's continued representation of Koi post-termination. Put differently, Koi must show that had Marron disclosed the misconduct, Mastroianni would not have continued as Koi's counsel; *i.e.*, that Koi would have promptly replaced him with a competent attorney. The key question on summary judgment, then, is whether Koi has raised a genuine dispute of material fact on this point. Although an exceedingly close question, I conclude that Koi has done so.

The threshold inquiry is whether Marron carried its initial burden of negating Koi's allegation that Koi would have promptly replaced Mastroianni. *See Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000) (explaining that the summary-judgment movant bears the "initial burden" of "produc[ing] evidence negating an essential element of the nonmoving party's case"). I believe that Marron has done so based on two incidents concerning Koi's prior responses to learning of Mastroianni's misconduct. Because the majority does not address either of these incidents, I will briefly describe them here.

First, Marron presented evidence that Koi had previously declined to terminate Mastroianni despite learning that he had engaged in similar misconduct while representing Koi in an unrelated 2014 lawsuit. In that action, Koi's opponent Clay Burnett Group (Burnett) had obtained a money judgment and sought to place a levy on Koi's corporate bank account. Burnett's counsel sent Koi's executive Jeremy Husk the writ of execution along with a declaration stating

that the money judgment was based on "monetary sanctions" resulting from Koi's failure to comply with discovery. When Husk confronted Mastroianni with this writ of execution, Mastroianni asserted that the judgment had been issued in the wrong case and that the levy had been reversed. This assertion was clearly false because the funds levied by Burnett were ultimately removed from Koi's account. Yet despite having notice that Mastroianni had engaged in sanctionable discovery misconduct and had lied to Koi about it, Koi did not terminate Mastroianni or prevent him from representing Koi in future matters.

Second, Marron cited the report from the magistrate judge in the SPI Litigation recommending the denial of Koi's motion to vacate the default judgment. In that report, the magistrate judge noted that "on at least one occasion, Husk reviewed a declaration that was, on its face, a response to a specific court order – an order that would have given Husk notice long ago that [SPI] was seeking terminating sanctions based on the company's and Mr. Matroianni's [sic] bad faith litigation." Husk did indeed sign a declaration on November 28, 2017 that was made "in response to the Court's October 3, 2017 order" (which compelled Koi to produce complete discovery responses and instructed SPI to move for sanctions) as well as "in opposition to [SPI's actual] motion for terminating sanctions." This indicates that Koi was on notice at that time that Mastroianni had engaged in misconduct for which the district court intended to impose sanctions. Yet Koi did not terminate Mastroianni or replace him with new counsel until over a year later (in December 2018), which was long after the entry of the default judgment and the treble-damages award.

Taken together, this evidence is more than sufficient to negate Koi's theory that it would have promptly replaced

Mastroianni had Marron warned it of his misconduct while at Marron. Accordingly, the burden shifted to Koi to produce evidence sufficient to raise a genuine dispute of material fact on that issue. *See In re Apple Comput. Sec. Litig.*, 886 F.2d 1109, 1113 (9th Cir. 1989).

The only evidence that Koi submitted to support its theory is (1) a declaration from its CEO Kathy Peterson, and (2) its Response to Marron's Interrogatory No. 4. The Peterson declaration and Koi's Interrogatory Response No. 4 state, in nearly identical language, that "[h]ad [Koi] been advised by . . . Hendricks or anyone else at Marron" that Mastroianni had mishandled the SPI Litigation and "was a malpractice liability," Koi "would have terminated his representation of Koi" and "would not have agreed to terminate Marron's representation of Koi until upcoming litigation deadlines were met." The critical inquiry, therefore, is whether this evidence is sufficient to carry Koi's burden of raising a genuine factual dispute regarding its assertion that it would have promptly replaced Mastroianni with competent counsel.

This presents a very close question. On the one hand, this court has repeatedly held that "[a] conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." *FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997); *see also Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497 (9th Cir. 2015) ("[A] self-serving declaration does not always create a genuine issue of material fact for summary judgment: The district court can disregard a self-serving declaration that states only conclusions and not facts that would be admissible evidence."); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) ("[T]his court has refused to find

a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony." (quoting *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996))).

The Peterson declaration and Koi's Interrogatory Response No. 4 arguably fall into this category of evidence. Their assertions that Koi would have replaced Mastroianni had it known of his misconduct are conclusory, boilerplate, and uncorroborated by any specific evidence; indeed, Koi fails to cite any documents or even specific factual details that would tend to support them. Furthermore, the statements are contradicted by the undisputed evidence of Koi's actual actions—namely, Koi's decision to continue working with Mastroianni even after learning of his misconduct in the Burnett litigation and its failure to replace Mastroianni in the SPI Litigation until over a year after learning of the district court's intent to impose sanctions.

On the other hand, this court has cautioned that a district court "is not to make credibility determinations or weigh conflicting evidence, and is required to draw all inferences in a light most favorable to the nonmoving party" at the summary-judgment stage. *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990). And numerous panels of this court have denied summary judgment even when the nonmovant offered only conclusory, self-serving, and uncorroborated testimony. *See, e.g.*, *Santillan v. USA Waste of Calif., Inc.*, 853 F.3d 1035, 1043 n.8 (9th Cir. 2017) (holding that "[a]n employee's 'albeit uncorroborated and self-serving' testimony is sufficient to establish a *prima facie* workplace discrimination case if a reasonable jury could infer discrimination from the employee's testimony" (quoting *Nigro*, 784 F.3d at 498)); *In re SK Foods, L.P.*, 693 F. App'x 655, 656 (9th Cir. 2017) (holding that "the declarations

submitted by [plaintiffs], while often conclusory and self-serving and even at times inconsistent with their earlier testimony, created disputed issues of material fact").

Given the closeness of this question, I am ultimately inclined to agree with the majority that Koi's evidence, though self-serving and arguably uncorroborated, is sufficient to raise a genuine dispute on the replacement issue. *See* Maj. Op. 37–38, 46–47. This is particularly so because the very fact of CEO Peterson's inquiry as to why Marron had terminated Mastroianni itself gives rise to an inference that a truthful answer might have caused a prompt change of Koi's counsel. I therefore conclude that Koi has presented sufficient evidence of causation to permit a reasonable jury to find in its favor on the breach-of-fiduciary-duty claim.

Finally, I note that the majority asserts that my treatment of Koi's legal-malpractice and breach-of-fiduciary-duty claims is "contradictory" because both claims "are based on the very same alleged breach of Marron's dut[y] to disclose," and therefore should be subject to the same causation analysis. Maj. Op. 43. If the failure to disclose were in fact the basis of Koi's legal-malpractice claim, then I might be inclined to agree. But the record shows that that is not Koi's theory.

My reading of both Koi's complaint and its summary-judgment briefing below demonstrates that its legal-malpractice claim against Marron rests on vicarious liability for Mastroianni's mishandling of the SPI Litigation while he was employed by Marron. *See, e.g.*, Koi SJ Opp. 19 (arguing that "Marron is vicariously liable" for "incidents of malpractice that occurred while [Mastroianni] was employed by Marron"); *id.* at 22 (contending that Koi's "malpractice damages" were caused by "Mastroianni's

conduct while Marron represented Koi" (capitalization altered)); *id.* at 23 (describing Marron's acts of malpractice by citing Mastroianni's mishandling of the SPI Litigation while at Marron).

By contrast, Koi's briefing discusses Marron's failure to disclose solely in connection with Koi's breach-of-fiduciary-duty claim. *See, e.g.*, *id.* at 17 (contending that Marron "breached [its] fiduciary duty by failing to disclose Mastroianni's conduct" (capitalization altered)).

"In our adversarial system of adjudication, we follow the principle of party presentation," which "rel[ies] on the parties to frame the issues for decision." *United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020) (quoting *Greenlaw v. United States*, 554 U.S. 237, 128 (2008)). And Koi may not "attempt to change [its] theory on appeal." *See, e.g.*, *Manriquez v. City of Phoenix*, 654 F. App'x 350, 354 (9th Cir. 2016). Relying on both *United States v. Wahid*, 614 F.3d 1009, 1016 (9th Cir. 2010), and *Yee v. City of Escondido*, 503 U.S. 519, 534 (1992), the majority asserts that "once a 'claim is properly presented, a party can make any argument in support of that claim.'" Maj. Op. 43 n.11 (quoting *Yee*, 503 U.S. at 534). But that rule "allow[s] a party to 'adduce[] additional support for [its] side of an issue'" and "refine and clarify its analysis in light of the district court's ruling," not to raise a new theory if it "would require [the appellate court] to recast appellants' position in the district court." *United States v. Little*, 123 F.4th 1360, 1369 (D.C. Cir. 2024) (citations omitted) (explaining that "*Yee*'s holding is not [] sweeping"). *Yee* does not alter the well-settled rule that "[g]enerally, an appellate court will not hear an issue raised for the first time on appeal." *Broad v. Sealaska Corp.*, 85 F.3d 422, 430 (9th Cir. 1996).

Because Koi's vicarious-liability theory of legal malpractice permits resolution of causation as a matter of law, whereas its failure-to-disclose theory of breach of fiduciary duty does not, I see no inconsistency in affirming summary judgment on the former claim while reversing on the latter.

## CONCLUSION

For all of the reasons set forth above, I would affirm the district court's grant of summary judgment on Koi's legal-malpractice and negligent-supervision claims because Koi has failed to establish substantial-factor causation as a matter of law. I would, however, reverse the grant of summary judgment on Koi's breach-of-fiduciary-duty claim to the extent that it is premised on Marron's alleged failure to disclose Mastroianni's misconduct because Koi has raised a genuine dispute of material fact on that issue. Accordingly, I respectfully concur in part and dissent in part.